No. 13-17596

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

JAYCEE DUGARD and A. DUGARD,

Plaintiffs-Appellants,

v.

UNITED STATES OF AMERICA

Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

BRIEF FOR APPELLEE

STUART F. DELERY
*Assistant Attorney General*

MARK B. STERN
*(202)514-5089*
PATRICK G. NEMEROFF
*(202)305-8727*
*Attorneys, Appellate Staff*
*Civil Division, Room 7217*
*Department of Justice*
*950 Pennsylvania Ave., NW*
*Washington D.C. 20530*

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ................................................................1

STATEMENT OF THE ISSUE..................................................................2

PERTINENT STATUTORY PROVISIONS....................................................3

STATEMENT OF THE CASE.................................................................3

A.     Nature of the Case................................................................3

B.     The Federal Parole System.....................................................4

C.     Factual and Procedural Background.........................................9

SUMMARY OF ARGUMENT................................................................13

STANDARD OF REVIEW ...................................................................15

ARGUMENT ..................................................................................16

I.     The United States Did Not Have a Duty Of Care Under California
       Law to Unidentifiable and Unforeseeable Victims of Garrido ...........16

       A.     The District Court Correctly Analogized the United States'
              Role in Supervising Parolees to that of Private Rehabilitation
              Programs, Which Owe No Duty of Care to the General Public
              Under California Law ..................................................17

       B.     No Other Private Person Analogies Support Plaintiffs'
              FTCA Claim....................................................................26

II.    Plaintiffs' FTCA Claim Is Barred by the Discretionary Function
       Exemption ...........................................................................31

III.   The Probation Officers' Alleged Negligence Did Not Proximately
       Cause Plaintiffs' Injuries...........................................................39

CONCLUSION ........................................................................................................45

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page**

*Anderson v. United States,*
   55 F.3d 1379 (9th Cir. 1995)...................................................................24, 27

*Bailey v. United States,*
   623 F.3d 855 (9th Cir. 2010)...........................................................................33

*Beauchene v. Synanon Found., Inc.,*
   88 Cal. App. 3d 342 (1979) ..........................................18, 19, 20, 22, 24, 26, 27

*Belluomini v. United States,*
   64 F.3d 299 (7th Cir. 1995)............................................................................25

*Berkovitz v. United States,*
   486 U.S. 531 (1988)..........................................................................32, 33, 35

*Bragg v. Valdez,*
   111 Cal. App. 4th 421 (2003) .....................................................................29, 30

*Brenneman v. California,*
   208 Cal. App. 3d 812  (1989) .........................................................................19

*Cardenas v. Eggleston Youth Ctr.,*
   193 Cal. App. 3d 331 (1987) ....................................................... 18, 20, 22, 25

*Carter v. United States,*
   982 F.2d 1141 (7th Cir. 1992) .......................................................................25

*Conrad v. United States,*
   447 F.3d 760 (9th Cir. 2006).........................................................................16

*Dichter-Mad Family Partners, LLP v. United States,*
   709 F.3d 749 (9th Cir. 2013).........................................................................36

*Fassler v. U.S. Parole Comm'n,*
   964 F.2d 877 (9th Cir. 1991).........................................................................4

*Fisher Bros. Sales, Inc. v. United States,*
46 F.3d 279 (3rd Cir.) ............................................................ 37, 38

*Fleming v. State of California,*
34 Cal. App. 4th 1378 (1995) ............................................ 40, 41, 43

*GATX/ Airlog Co. v. United States,*
286 F.3d 1168 (9th Cir. 2002) ............................................. 32, 34

*General Dynamics Corporation v. United States,*
139 F.3d 1280 (9th Cir. 1998) .............................. 15, 36, 37, 38, 39

*Gould v. Madonna,*
5 Cal. App. 3d 404 (1970) ..............................................................24

*Hells Canyon Pres. Council v. U.S. Forest Serv.,*
593 F.3d 923 (9th Cir. 2010) ..........................................................16

*Hooks III v. Southern California Permanente Medical Group,*
107 Cal. App. 3d 435 (1980) ....................................................... 27, 28

*In re Glacier Bay,*
71 F.3d 1447 (9th Cir. 1995) ..........................................................38

*Indian Towing Co. v. United States,*
350 U.S. 61 (1955) .................................................................. 17, 24

*Johnson v. California,,*
69 Cal. 2d 782 (1968) .....................................................................19

*Kennewick Irrigation Dist. V. United States,*
880 F.2d 1018 (9th Cir. 1989) .......................................... 32, 33

*LaBarge v. United States,*
798 F.2d 364 (9th Cir. 1986) ......................................... 17, 25, 31

*Megeff v. Doland,*
123 Cal. App. 3d 251 (1981) ........................................... 28, 29

*Mitchell v. Gonzales,*
54 Cal. 3d 1041 (1991) ...................................................................41

*Morrissey v. Brewer*,
   408 U.S. 471 (1972) ................................................................33, 35, 44

*Myers v. Quesenberry*,
   144 Cal. App. 3d 888 (1983) .......................................................... 30, 31

*Poncher v. Brackett*,
   246 Cal. App. 2d 769 (1966) ................................................................28

*Reisner v. Regents of the University of California*,
   31 Cal. App. 4th 1195 (1995) ...............................................................30

*Rice v. Ctr. Point, Inc.*,
   154 Cal. App. 4th 949 (2007) ........................... 18, 20, 22, 23, 25, 26

*Rowland v. Christian*,
   69 Cal. 2d 108 (1968) .................................................................... 19, 26

*Saelzler v. Advanced Group 400*,
   25 Cal. 4th 763 (2001) .........................................................................39

*Sloan v. Dep't of housing & Urban Dev.*,
   236 F.3d 756 (D.C. Cir. 2001) ......................................................... 36, 37

*State Dep't of State Hosps. v. Superior Court*,
   163 Cal. Rptr. 3d 770 (2013) ................................................................43

*State Dep't of State Hosps. v. Superior Court*,
   167 Cal. Rptr. 3d 657 (Feb. 11, 2014) ...................................................43

*State of Cal. v. Superior Court*,
   150 Cal. App. 3d 848 (1984) .......................................................... 40, 43

*Tarassoff v. Regents of Univ. of Cal.*,
   17 Cal. 3d 425 (1976) ..................................................................... 27, 28

*Terbush v. United States*,
   516 F.3d 1125 (9th Cir. 2008) ..............................................................32

*Thompson v. Cnty. of Alameda,*
27 Cal. 3d 741 (1980) ........................................................... 19, 20

*U.S. Gold & Silver Invs., Inc. v. United States,*
885 F.2d 620  (9th Cir. 1989) ......................................................31

*United States v. Gaubert,*
499 U.S. 315 (1991)....................................................................32

*United States v. Olson,*
546 U.S. 43 (2005)......................................................................16

*United States v. Varig Airlines,*
467 U.S. 797 (1984)....................................................................35

*Vickers v. United States,*
228 F.3d 944 (9th Cir. 2000)................................................. 44, 45

*Vu v. Singer Co.,*
706 F.2d 1027 (9th Cir. 1983) .........................................18, 21, 22

*Walt Rankin & Assocs., Inc. v. City of Murrieta,*
84 Cal. App. 4th 605 (2000)........................................................39

*Whitcombe v. Cnty. of Yolo,*
73 Cal. App. 3d 698 (1977) .................................... 19, 40, 41, 44

*Xue Lu v. Powell,*
621 F.3d 944 (9th Cir. 2010).................................................. 15, 17

## Statutes:

18 U.S.C. § 3655 .........................................................................5

18 U.S.C. § 4203(a) ....................................................................5

18 U.S.C. § 4203(b)(1)-(4) ..........................................................4

18 U.S.C. § 4203(b)(4)..................................................................5

18 U.S.C. § 4211 ............................................................................7

18 U.S.C. § 4213(a) ........................................................................7

18 U.S.C. § 4214(d) ...........................................................8, 34, 42

18 U.S.C. § 4214(d)(1) ....................................................................8

18 U.S.C. § 4214(d)(2) ...............................................................9, 34

18 U.S.C. § 4214(d)(3) ...............................................................9, 34

18 U.S.C. § 4214(d)(4) ...............................................................9, 34

18 U.S.C. § 4214(d)(5) ....................................................................9

18 U.S.C. § 4214(f) .......................................................................34

28 U.S.C. § 291(b) ........................................................................11

28 U.S.C. § 1291 ..............................................................................1

28 U.S.C. § 1346(b) ...................................................................1, 16

28 U.S.C. § 1346(b)(1) ..................................................................16

28 U.S.C. §§ 2671-2680 ............................................................1, 16

28 U.S.C. § 2674 ...........................................................3, 13, 16, 24

28 U.S.C. § 2680(a) ...................................................................2, 31

Anti-Drug Abuse Act of 1988,
    Pub. L. No. 100-690, § 7303, 102 Stat. 4181 .................................34

Cal. Gov. Code § 845.8...................................................................24

Parole Commission and Reorganization Act of 1976,
    Pub. L. No. 94-233, 90 Stat. 219...............................................4

Sentencing Reform Act of 1984,
  Pub. L. No. 98-473, §§ 211-212, 98 Stat. 1987 ..................................................4

**Regulations:**

28 C.F.R. §§ 2.1-2.65 ..................................................................................5

28 C.F.R. § 2.20 ........................................................................................9

28 C.F.R. § 2.38 ........................................................................................5

28 C.F.R. § 2.40(a)(5) ...............................................................................6

28 C.F.R. § 2.40(d) ...................................................................................6

28 C.F.R. § 2.40(f) ..................................................................................34

28 C.F.R. § 2.42 ........................................................................................7

28 C.F.R. § 2.43 ........................................................................................7

28 C.F.R. § 2.44(a) ..............................................................................7, 33

28 C.F.R. § 2.44(b) ........................................................................8, 33, 42

28 C.F.R. § 2.48(a) ...............................................................................8, 33

28 C.F.R. § 2.48(e) ...............................................................................8, 33

28 C.F.R. § 2.48(e)(1) .............................................................................42

28 C.F.R. § 2.50(a) ...................................................................................8

28 C.F.R. § 2.50(b) ...................................................................................8

28 C.F.R. § 2.52(a) ........................................................................8, 34, 42

28 C.F.R. § 2.52(a)(1) .....................................................................8, 9, 34

28 C.F.R. § 2.52(b) ...................................................................................9

**Legislative Materials:**

H.R. Conf. Rep. No. 94-838 (1976).............................................................................4, 35, 45

**Other Authorities:**

Restatement (Second) of Torts § 315.........................................................................27, 29

No. 13-17596

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————————

JAYCEE DUGARD and A. DUGARD,

Plaintiffs-Appellants,

v.

UNITED STATES OF AMERICA

Defendant-Appellee.

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

———————————————

BRIEF FOR APPELLEE

———————————————

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under the Federal Torts Claim Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680. The district court dismissed plaintiffs' claims and entered final judgment on October 28, 2013. 1 ER 1. Plaintiffs filed a timely notice of appeal on December 12, 2013. 2 ER 80. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

While on parole from federal prison, Phillip Garrido kidnapped plaintiff Jaycee Dugard. In this action under the Federal Tort Claims Act, Ms. Dugard and her daughter allege that the United States failed to revoke Garrido's parole due to the negligence of his probation officers and seek damages for the injuries he inflicted.

The questions presented on appeal are:

1. Whether the district court correctly dismissed plaintiffs' claim because, under California law, a private person in like circumstances to the United States would not have had a duty to unidentifiable and unknowable individuals harmed by Garrido during his parole.

2. Whether, in the alternative, the district court's order should be affirmed because plaintiffs' action to recover damages for the United States' failure to revoke Garrido's parole is barred by the FTCA's exception for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty." 28 U.S.C. § 2680(a).

3. Whether, in the alternative, the district court's order should be affirmed because the probation officers' alleged negligent failure to report parole violations to the United States Parole Commission did not proximately cause plaintiffs' injuries.

2

## PERTINENT STATUTORY PROVISIONS

Pertinent statutory provisions are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.  Nature of the Case

In 1991, Phillip Garrido kidnapped plaintiff Jaycee Dugard and held her captive, inflicting himself on her sexually and fathering two children.  The brutality of his conduct is unspeakable.

At the time that Ms. Dugard was kidnapped, Garrido was a federal prisoner on parole.  In this action under the Federal Tort Claims Act, plaintiffs allege that the U.S. Parole Commission should have revoked Garrido's parole and seek damages for the injuries that Ms. Dugard received at Garrido's hands.

The district court dismissed plaintiffs' suit.  The court explained that the FTCA makes the United States liable "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.  The court noted that "California has consistently narrowed the scope of the duty of care in cases where private parties provided criminal rehabilitative services, had control over the criminals, and were empowered to restrain, detain, or punish them as part of the rehabilitative process."  1 ER 9.  After conducting an extensive review of relevant precedent, 1 ER 9-20, the court concluded that, under California law, "private persons in like

3

circumstances to those of the parole officers of this case . . . do not owe a duty of reasonable care to control others to the entire world or to the general public," 1 ER 9.

Plaintiffs have appealed.

### B. The Federal Parole System

**1.** The Parole Commission and Reorganization Act of 1976, Pub. L. No. 94-233, 90 Stat. 219, "vest[ed] authority for parole decision making in the discretion of the U.S. Parole Commission." Joint Explanatory Statement of the Committee of Conference, H. R. Conf. Rep. No. 94-838, at 22 (1976) ("Joint Explanatory Statement"). The Parole Commission has the authority, with respect to individuals convicted of a federal crime prior to November 1, 1987, to "(1) grant or deny an application or recommendation to parole any eligible prisoner; (2) impose reasonable conditions on an order granting parole; (3) modify or revoke an order paroling any eligible prisoner; and (4) request probation officers and other individuals, organizations, and public or private agencies to perform such duties with respect to any parolee as the Commission deems necessary for maintaining proper supervision of and assistance to such parolees." 18 U.S.C. § 4203(b)(1)-(4).[1]

---

[1] Individuals convicted after November 1, 1987 are subject to a system of determinate sentences and probation, which replaced the parole system pursuant to the Sentencing Reform Act of 1984, Pub. L. No. 98-473, §§ 211-212, 98 Stat. 1987. *See Fassler v. U.S. Parole Comm'n*, 964 F.2d 877, 878-79 (9th Cir. 1991).

The Parole Commission may "promulgate rules and regulations establishing guidelines . . . as are necessary to carry out a national parole policy." *Id.* § 4203(a). Pursuant to this authority, the Parole Commission has issued the United States Parole Commission Rules and Procedures Manual. *See, e.g.,* United States Parole Commission, Rules and Procedures Manual (1989) ("Manual"), 6 ER 1136 – 7 ER 1379.[2] The Manual "contains the Commission's rules (28 C.F.R. §§ 2.1-2.65) as well as the notes, procedures, and appendices that clarify and supplement these rules." 6 ER 1141.

**2.** The Parole Commission tasks United States Probation Officers with supervising parolees. *See* 28 C.F.R. § 2.38. *See also* 18 U.S.C. § 4203(b)(4) (authorizing the Parole Commission to request supervision by "probation officers and other individuals, organizations, and public or private agencies"); 18 U.S.C. § 3655 (providing that probation officers "shall perform such duties with respect to persons on parole as the United States Parole Commission shall request"). "A probation officer occupies a unique position—responsible both for protecting the community and assisting the offender." Administrative Office of the United States Courts, The

---

[2] *See also, e.g.,* United States Parole Commission Rules and Procedures Manual (1987); Parole Commission Rules (1991); U.S. Commission Rules & Procedures Manual (1995); U.S. Parole Commission Rules & Procedures Manual (1997). During the majority of the timeframe at issue in this case, the operative manual was the 1989 manual.

5

Supervision Process, Publication 106, at 21 (1983) ("Publication 106") (9 ER 2005).[3]
"As the interpreter of the . . . Parole Commission's terms and conditions of
supervision, the probation officer must balance the protection of society with the
reintegration of the offender into that society." *Id.* at 2 (9 ER 2000).

The parolee provides monthly reports to his probation officer, 28 C.F.R.
§ 2.40(a)(5) (6 ER 1243), and may be required to participate in additional counseling
or supervision programs, *see, e.g.*, *id.* § 2.40(d) (community supervision program) (6 ER
1244); *see also*, Notes and Procedures §§ 2.40-03 (Drug After-Care Condition), 2.40-04
(Mental Health After-Care) (6 ER 1245). The probation officer further supervises the
parolee through face-to-face contact; communications with the parolee's employer,
counselors, family, and friends; and regularly scheduled group counseling and
discussions. Manual, Appendix 5 (6 ER 1361). Based on these contacts and the
parolee's monthly reports, the probation officer reevaluates the supervision plan semi-
annually, preparing a case review that "describe[s] the degree of progress achieved in
meeting previous objectives, new problems arising in the case, and the supervision
plan to meet the current situation." Manual, Appendix 5 (6 ER 1363). "At least
annually, a review of this over-all parole supervision plan will be made, jointly, by the
Chief of Probation and the Parole Commission." Manual, Appendix 5 (6 ER 1364).

---

[3] Publication 106 "provides guidance and direction to probation officers" in the
"[s]upervision of offenders." Publication 106, at 1 (9 ER 1999).

After "24 months of continuous supervision and annually thereafter," the probation officer must submit a supervision report to the Parole Commission. 28 C.F.R. § 2.42. "The probation officer shall submit additional reports as the Commission may direct." *Ibid.* The Manual Notes and Procedures provide additional guidance as to when probation officers should submit reports to the Parole Commission. *See, e.g.,* Notes and Procedures § 2.42-02(a) (6 ER 1253) ("The probation officer shall immediately report to the Parole Commission the arrest of a releasee for a new criminal offense."); *id.* § 2.42-02(b) (6 ER 1253) ("The Parole Commission delegates to the probation officer the authority to exercise discretion as to when technical violations or infractions are reported except that all violations shall be reported immediately under" specified conditions); *id.* § 2.40-13(c)(2) (6 ER 1250) ("Any instance of illegal drug use by any parolee shall be reported by the probation officer to the Commission."). The Parole Commission relies on these reports in determining whether to continue its supervision of the parolee or whether to terminate parole early. *See* 18 U.S.C. § 4211; 28 C.F.R. § 2.43.

**3.** If a parolee is alleged to have violated conditions of parole, the Commission may "issue a summons requiring the offender to appear for a preliminary interview or local revocation hearing," or may "issue a warrant for the apprehension and return of the offender to custody." 28 C.F.R. § 2.44(a); *see also* 18 U.S.C. § 4213(a). The Commission is not required to act upon a parolee's violation and may

7

withhold"[i]ssuance of a summons or warrant . . . until the frequency or seriousness of violations, in the opinion of the Commission, requires such issuance." 28 C.F.R. § 2.44(b). Upon being retaken on a warrant, the parolee is "given a preliminary interview . . . to enable the Commission to determine if there is probable cause . . . and if so, whether a revocation hearing should be conducted." *Id.* § 2.48(a).

If the Commission finds probable cause, the parolee may nonetheless be reinstated to supervision without a revocation hearing if the Commission determines that "[c]ontinuation of revocation proceedings is not warranted despite the violations found." *Id.* § 2.48(e). Alternatively, the Commission may hold a revocation hearing, intended "to determine whether the parolee has violated the conditions of his release and, if so, whether his parole or mandatory release should be revoked or reinstated." *Id.* § 2.50(a). Following a revocation hearing, at which "[t]he alleged violator may present witnesses, and documentary evidence," *id.* § 2.50(b), the examiner panel makes its recommendation to the Commission, *see* Notes and Procedures § 2.50-08 (6 ER 1283).

If the Parole Commission finds by a preponderance of the evidence that the parolee has violated a condition of parole, it may take any of a number of actions. *See* 18 U.S.C. § 4214(d); 28 C.F.R. § 2.52(a). The Commission may "restore the parolee to supervision." 18 U.S.C. § 4214(d)(1); 28 C.F.R. § 2.52(a)(1). "[W]here appropriate," it may reprimand the parolee, modify the conditions of release, or refer the parolee to

8

a community treatment center. 18 U.S.C. § 4214(d)(2)-(4); 28 C.F.R. § 2.52(a)(1). Or it may revoke parole. 18 U.S.C. § 4214(d)(5); 28 C.F.R. § 2.52(b). If the Commission revokes parole, it relies on guidelines to determine the length of the parolee's resulting prison sentence. *See* 28 C.F.R. § 2.20; 6 ER 1163-1204.

### C. Factual and Procedural Background

**1.** In 1988, after serving eleven years of a federal sentence for rape and kidnapping, Philip Garrido was granted parole by the Parole Commission, *see* 8 ER 1690-91, and assigned for supervision to the U.S. Probation Office for the Northern District of California, *see* 8 ER 1698. Garrido was subject to general parole conditions, as well as to several special conditions, including a drug and alcohol aftercare requirement, a mental health aftercare requirement, and a temporary stay in a community treatment center. *See* 8 ER 1691. Garrido's probation officer prepared a supervision plan, 9 ER 2059, and Garrido attended counseling sessions and submitted to regular drug and alcohol testing, *see, e.g.*, 7 ER 1402-32 (Monthly Treatment Reports of Garrido's counselor). During his first two years of parole, Garrido failed multiple drug tests and admitted to occasional drug use. *Ibid.* Despite these setbacks, in December 1990, Garrido's counselor reported that Garrido "appears to be doing well" and stated that his "[p]rognosis remains fair." 7 ER 1432.

On January 24, 1991, Garrido's probation officer submitted a 24-month supervision report to the Parole Commission, stating that Garrido had "[s]ome

problem early on with opportunist drug use," but had "adjusted." 9 ER 2055-56. The probation officer recommended continued supervision and suggested that Garrido "continue regular counselling program with drug testing." *Ibid.* On February 12, 1991, the Parole Commission accepted the probation officer's recommendation and ordered continued supervision. 9 ER 2057.

**2.** On June 10, 1991, Garrido kidnapped eleven-year old Jaycee Dugard and brought her to a shed in the backyard of his house, where he held her captive. Garrido repeatedly sexually assaulted Dugard, and she gave birth to two daughters fathered by Garrido. In August 2009, Dugard and her daughters were discovered, and Garrido was arrested. *See* 8 ER 1798-1800.

**3.** In September 2011, Dugard and her daughters filed this action under the FTCA. 2 ER 525-49. Plaintiffs alleged that the Parole Commission would have revoked Garrido's parole prior to Ms. Dugard's kidnapping if his parole officer had not negligently failed to make it aware of Garrido's drug violations. 2 ER 541-44. [4]

---

[4] In their initial complaint and in two amended complaints, plaintiffs raised additional claims that are not at issue in this appeal. *See* 2 ER 544-49; *see also* 2 ER 249-94. Those claims were either dismissed by the district court and have not been appealed, or were abandoned by plaintiffs during the course of litigation. *See, e.g.,* 4 ER 651, n.2. Plaintiffs stipulated that they do not seek to impose liability against the United States based on conduct of the United States Parole Commission. *See* Doc. 51, Ex. A. Also, one of Dugard's daughters voluntarily dismissed her claims with prejudice and is no longer a party in this case. 2 ER 202.

On April 5, 2012, the district court granted in part and denied in part the government's motion to dismiss. 1 ER 57-79. The court concluded that the discretionary function exception did not preclude suit because, based on plaintiffs' allegations the Parole Commission "would, more likely than not, have exercised [its] discretion in a manner that would have prevented injury," 1 ER 65, if it had received fuller reports from the probation officers. The court granted the government's motion to dismiss with respect to other claims. 1 ER 74-77. [5]

Following discovery, the government filed a motion to dismiss, for judgment on the pleadings, and for summary judgment. 9 ER 1919-96.

On October 11, 2013, the district court dismissed plaintiffs' action. The court explained that the FTCA exposed the United States to damages only to the extent that state law would impose liability on private persons in like circumstances. The court concluded that "private persons, under like circumstances to those that obtained for the government officers in this case, would not be liable to the Plaintiffs under California law." 1 ER 7. After conducting an extensive review of the case law, 1 ER 9-20, the court observed that "California has consistently narrowed the scope of the duty of care in cases where private parties provided criminal rehabilitative services, had control over the criminals, and were empowered to restrain, detain, or punish

---

[5] Pursuant to 28 U.S.C. § 291(b), Ninth Circuit Judge Carlos T. Bea sat by designation as district court judge for this case. 3 ER 524.

them as part of the rehabilitative process." 1 ER 9. The court explained that, under California law, "private persons in like circumstances to those of the parole officers of this case . . . do not owe a duty of reasonable care to control others to the entire world or to the general public," 1 ER 9. Because there is no allegation or evidence in this case that "Plaintiffs were specifically identifiable or foreseeable to the parole officers as potential victims of Garrido," the court held that "the United States owed no duty of reasonable care to Plaintiffs in this case." 1 ER 26.

Although the court's holding with respect to state law duty was dispositive of the case, the court went on to consider the other grounds presented by the government's motion. 1 ER 27-56. The court again held that the FTCA's discretionary function exemption does not bar plaintiffs' claims, finding that the probation officers had a mandatory duty to report drug violations to the Parole Commission, and deeming irrelevant the Commission's intervening discretion in deciding whether to revoke Garrido's parole. 1 ER 27-35. The court also held there is a question of fact as to whether certain of the probation officers' alleged negligence proximately caused plaintiffs' injuries. 1 ER 38-48. However, the court granted summary judgment to the government as to the probation officers' alleged failure to report violations prior to and through November 1989, reasoning that even if Garrido's parole had been revoked due to those reports, he would have been released from prison by the time that he kidnapped Dugard. 1 ER 41-43.

12

On October 28, 2013, the district court dismissed plaintiffs' claims and entered final judgment for the government.  1 ER 1.  Plaintiffs filed their notice of appeal on December 12, 2013.  2 ER 80.

## SUMMARY OF ARGUMENT

**1.**  Ms. Dugard and her daughters were subjected to an ordeal of extraordinary malignity by Phillip Garrido, who had been incarcerated in federal prison and released on parole.  In this action, plaintiffs urge that the ordeal could have been avoided if the Parole Commission had revoked Garrido's parole prior to his assault on Ms. Dugard.

The California courts have addressed in several cases the tort liability of private rehabilitation services that supervise convicts, probationers, and other dangerous individuals, and have repeatedly held that such private rehabilitation services have no actionable duty of care to the public generally.  Rather, they owe an actionable duty of care only to foreseeable and specifically identifiable victims.

The district court correctly dismissed plaintiffs' suit under the FTCA, which makes the United States liable "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.  The conduct at issue here is directly analogous to that at issue in California cases involving private rehabilitation services, and the liability of the United States is not greater than the liability that California law imposes on private persons in like circumstances.

13

Plaintiffs identify no other line of authority in California law that offers a closer analogy than the cases relied on by the district court, and the analogies that they offer, such as cases involving the doctor-patient relationship, are readily distinguishable. Plaintiffs urge that the Court should nevertheless look to these flawed analogies because private rehabilitation services engage in conduct that is closely related to conduct undertaken by government agencies that supervise potentially dangerous persons. But it is no argument to claim that private rehabilitation services perform actions *too similar* to the government actions at issue. The rehabilitation services are private in the only way that matters—they are not protected by government immunity.

**2.** In the alternative, plaintiffs' claim is barred for the independent reason that it falls within the scope of the FTCA's discretionary function exception. Plaintiffs allege that they were injured because the Parole Commission, as a result of government negligence, did not revoke Garrido's parole. But the Parole Commission's revocation decisions are discretionary, and it would not have been required to revoke Garrido's parole even if it had been made aware of all the facts in probation officers' possession. An individual's parole may be revoked only after the Commission has made a series of decisions, each of which involves an element of choice and requires the balancing of policy concerns regarding rehabilitation of convicts, public safety, and the costs of incarceration. Plaintiffs urge that they do not

14

challenge the negligence of the Parole Commission, but only the negligence of the probation officers. But this Court's decision in *General Dynamics Corporation v. United States*, 139 F.3d 1280, 1283 (9th Cir. 1998), makes clear that a plaintiff cannot circumvent the discretionary function exception by challenging a mandatory act that precedes an independent discretionary act, if the plaintiff's alleged injury resulted from the discretionary act.

**3.** Plaintiffs' claim also fails because the probation officers' alleged negligence did not proximately cause their injuries. In a line of decisions involving facts nearly identical to those presented here, California courts have held that plaintiffs cannot satisfy the proximate cause requirement when an intervening discretionary act stands between alleged negligence and plaintiffs' injury. In this case, plaintiffs' injury would have been avoided only if the Commission had revoked Garrido's parole. Because revocation decisions are committed to the Commission's discretion and depend on the balancing of several countervailing policy concerns, it should not be left to the trier of fact to speculate as to how the Commission may have decided to respond to additional reports of Garrido's violations.

## STANDARD OF REVIEW

This Court reviews de novo a district court's dismissal of an FTCA claim because a private person under like circumstances to the United States would not be liable under state law. *See Xue Lu v. Powell*, 621 F.3d 944, 947 (9th Cir. 2010). It also

15

reviews de novo a district court's grant of summary judgment, and may affirm on any basis supported by the record. *See Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 929 (9th Cir. 2010).

## ARGUMENT

### I.     The United States Did Not Have a Duty Of Care Under California Law to Unidentifiable and Unforeseeable Victims of Garrido.

The Federal Torts Claim Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680, provides a limited waiver of sovereign immunity and creates a cause of action for certain tort actions against the United States "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).

Subject to several important exceptions, the FTCA makes the United States liable "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.  "In assessing the United States' liability under the FTCA, [courts] are required to apply the law of the state in which the alleged tort occurred."  *Conrad v. United States*, 447 F.3d 760, 767 (9th Cir. 2006).  Rather than looking to the law governing the conduct of state or local entities, a court must seek an analogy to the state law governing private persons.  *See United States v. Olson*, 546 U.S. 43, 46 (2005).

16

"Because the federal government could never be exactly like a private actor, a court's job in applying the standard is to find the most reasonable analogy." *LaBarge v. United States*, 798 F.2d 364, 367 (9th Cir. 1986). This Court has observed that "[l]ike circumstances are not identical circumstances. Congress did not require a claimant to point to a private person performing a governmental function." *Xue Lu v. Powell*, 621 F.3d 944, 947-48 (9th Cir. 2010) (internal quotation marks omitted); *see also Indian Towing Co. v. United States*, 350 U.S. 61, 64-65 (1955) (analogizing claim that the United State negligently operated a lighthouse to situations in which a private person undertakes to warn the public of danger, inducing reliance on his conduct). Where the government entity at issue can be likened to multiple private parties, the court must choose the private party that is most analogous. *See LaBarge*, 798 F.2d at 369 (rejecting as "not realistic" plaintiff's analogy of the United States to an out-of-state employer, and instead finding that United States is "much more like a national corporation doing business in all the states").

## A. The District Court Correctly Analogized the United States' Role in Supervising Parolees to that of Private Rehabilitation Programs, Which Owe No Duty of Care to the General Public Under California Law.

**1.** The district court correctly analogized this case to cases involving private parties that render rehabilitation services to convicted criminals and other dangerous persons. 1 ER 9-20. The California courts have repeatedly held that private parties rendering rehabilitation services have no duty of care to victims of the individuals they

17

supervise, unless the particular victims were foreseeable and readily identifiable in advance of the injury. *See Vu v. Singer Co.*, 706 F.2d 1027 (9th Cir. 1983); *Rice v. Ctr. Point, Inc.*, 154 Cal. App. 4th 949 (2007); *Cardenas v. Eggleston Youth Ctr.*, 193 Cal. App. 3d 331 (1987); *Beauchene v. Synanon Found., Inc.*, 88 Cal. App. 3d 342 (1979).

The California Court of Appeal first addressed the duty a private rehabilitative service owes to victims of dangerous persons in *Beauchene v. Synanon Foundation, Inc.*, a case involving Synanon, a "private rehabilitation institution" for "drug addicts, alcoholics, and other people with character disorders," which voluntarily accepted convicts sent by courts in lieu of jail or prison. 88 Cal. App. 3d at 345. One of the convicts under Synanon's supervision escaped and "went on a 'crime spree' that included the harming or killing of several people." *Ibid.* A victim sued Synanon, arguing that it "had a duty to exercise due care in accepting convicted persons" and "had an affirmative duty to prevent [convicts] from leaving the program." *Ibid.*

The court rejected that claim, holding that Synanon "owed no duty of due care" to victims of the convict. *Id.* at 348. It noted that, "[g]enerally, a person owes no duty to control the conduct of anothers," but that "[e]xceptions are recognized in limited situations." In determining whether a defendant owes a duty in a particular case, courts in California consider a variety of factors, including "'the closeness of the connection between the defendant's conduct and the injury suffered'" and the "'consequences to the community of imposing a duty to exercise care with resulting

18

liability for breach.'" *Id.* at 347 (quoting *Rowland v. Christian*, 69 Cal. 2d 108, 113 (1968)) (also listing other additional factors). In the context of rehabilitative services, those factors required the court to "balance the public interest in safety from violent assault against the public policy favoring innovative criminal offender release and rehabilitation programs." *Ibid.* (internal quotation marks and citations omitted). That balance tipped against imposing a duty of care on Synanon, because "[w]ere we to find a cause of action stated we would in effect be encouraging the detention of prisoners in disregard of their rights and society's needs." *Id.* at 348 (quoting *Whitcombe v. Cnty. of Yolo*, 73 Cal. App. 3d 698, 716 (1977)).

The court found further support for its conclusion in cases holding public entities immune from liability in analogous circumstances. *Beauchene*, 88 Cal. App. 3d at 348 (citing *Whitcombe*, 73 Cal. app. 3d at 716; *Johnson v. California*, 69 Cal. 2d 782, 799 (1968)); *see also Thompson v. Cnty. of Alameda*, 27 Cal. 3d 741, 758 (1980) (holding that the "County was either statutorily immunized from liability or, alternatively, bore no affirmative duty that it failed to perform"); *Brenneman v. California*, 208 Cal. App. 3d 812, 818-20 (1989) (finding that the state had no general duty to control the parolee or to warn the public). "[T]he same public policy that moved the Legislature to immunize *public* release and rehabilitation programs from liability—to encourage such innovations in the interests of criminal justice—compels the conclusion that

respondent's *private* release and rehabilitation program owed no legal duty" to the victim. *Beauchene*, 88 Cal. App. 3d at 348.

Subsequent cases have reaffirmed that private rehabilitation programs do not owe a duty of care to protect the general public from inmates and probationers under the program's supervision. *See Cardenas*, 193 Cal. App. 3d at 334; *Rice*, 154 Cal. App. 4th at 957-60. In *Cardenas*, a private group home provider was sued by an individual attacked by a probationer under the provider's supervision, 193 Cal. App. 3d at 333, and in *Rice*, a private substance abuse treatment facility was sued after four inmates under the facility's supervision escaped and stabbed a victim, 154 Cal. App. 4th at 952. The California Court of Appeal rejected both claims because, although the "plaintiff[s] ha[d] been grievously injured," permitting "recourse against defendant[s] would have a potentially devastating impact on private rehabilitation programs." *Cardenas*, 193 Cal. App. 3d at 335. "[T]he public policy of encouraging rehabilitation of criminal offenders, the lack of foreseeability of injury to an identifiable person, and the fact that the risk of injury is shared by all members of the general public militate against the imposition of a duty to exercise ordinary care in these circumstances." *Rice*, 154 Cal. App. 4th at 958. "Such a duty is imposed only where the injury is foreseeable and the intended victim is identifiable." *Id.* at 955 (citing *Thompson v. Cnty. of Alameda*, 27 Cal. 3d 741, 752-53 (1980)).

20

This Court also has recognized that, under California law, private rehabilitation programs owe no duty of care to the general public.  In *Vu v. Singer Co.*, 706 F.2d 1027, 1030-31 (9th Cir. 1983), this Court affirmed a district court's holding that Jobs Corps Center—a private organization that housed and offered assistance to troubled youth—owed no duty of care under California law to a victim who was attacked and raped in her nearby home by Jobs Corps Center members.  The plaintiff alleged that Jobs Corps Center "owed a duty to the residents of the neighborhood to exercise reasonable care in supervising and controlling the corps members" and "the neighborhood should have been warned of the presence of such a group." *Id.* at 1028.  The district court rejected that claim, concluding that "under California law the victim must be foreseeable and specifically identifiable" for a defendant to have "any duty to warn" or "duty to control."  *Id.* at 1029.  Applying a deferential standard of review, this Court "conclude[d] that the [d]istrict [c]ourt correctly read California law as eliminating any duty on the part of [Job Corps Center] to warn [plaintiff]," and upheld the district court's finding that, "in the light of California's policy of providing support to rehabilitative programs, California courts would hold that *Beauchene* should be construed to cover" Job Corps Center.  *Id.* at 1031.

**2.**  Probation officers supervising a parolee are directly analogous to private rehabilitation programs supervising convicts, probationers, and other dangerous individuals.  Just as California courts have recognized that private rehabilitative

21

services further "public policy favoring innovative criminal offender release and rehabilitation programs," *Beauchene*, 88 Cal. App. 3d at 347, the United States parole system furthers "goals rang[ing] from protecting the public from further crime to providing the offender with needed education, vocational training, medical care, and other correctional treatment," Publication 106, at 1 (9 ER 1999). And imposing liability on the United States for its supervision of parolees, just like imposing liability on private rehabilitation services, would have the unwanted effect of "encouraging the detention of prisoners in disregard of their rights and society's needs." *Beauchene*, 88 Cal. App. 3d at 348.

Plaintiffs' claim is identical to the claims at issue in cases involving private rehabilitation programs. Plaintiffs allege that they were injured as a result of United States probation officers' negligent supervision of Garrido during his parole. In each of the above cases, a plaintiff alleged that he or she was injured as a result of a private rehabilitation service's negligent supervision of a dangerous individual under the service's control. *See Beauchene*, 88 Cal. App. 3d at 345 (alleging private party rehabilitation service's negligent supervision of convict); *Cardenas,* 193 Cal. App. 3d at 333 (alleging private group home provider's negligent supervision of a probationer); *Rice*, 154 Cal. App. 4th at 952 (alleging private substance abuse treatment facility's negligent supervision of four inmates); *Vu*, 706 F.2d at 1028 (alleging Jobs Corp Center's negligent supervision of troubled youth).

22

Plaintiffs' claim fails for the same reason as the claims in those cases. The United States and its probation officers owed no actionable duty to the general public in supervising Garrido and determining whether to revoke his parole. "Such a duty is imposed only where the injury is foreseeable and the intended victim is identifiable." *Rice*, 154 Cal. App. 4th at 955. Ms. Dugard's treatment by Garrido was tragic, but Ms. Dugard was not and could not have been specifically identified to the probation officers or the Parole Commission as a foreseeable victim. Because private rehabilitation services in like circumstances would owe no duty to plaintiffs under California law, the district court correctly dismissed plaintiffs' claim.

**3.** Plaintiffs offer no reason to reject the district court's reliance on the California decisions involving circumstances most clearly analogous to those presented here. Plaintiffs argue that the rehabilitation programs were only "technically 'private,'" and that "[t]he better private person analogues are [to] cases . . . involving *purely* private persons, who are not under contract with the State and are not performing State government functions," Appellants' Br. 56- 58 (emphasis in original). But the fact that private entities were performing functions directly analogous to those performed by government entities is not a reason to search for different, less apt analogies. And it is hardly surprising that, as the state court decisions have observed, some of the same factors that caused the California courts to limit liability with regard to public entities were also relevant to their determination to

23

limit the liability of private persons to cases in which a plaintiff was a foreseeable victim of a supervised person. *See, e.g.*, *Beauchene*, 88 Cal. App. 3d at 348.

A private entity does not cease to be in "like circumstances" on the theory that it performs actions *too similar* to the government actions at issue. Indeed, in *Indian Towing Company*, 350 U.S. at 66, the Supreme Court recognized a private person analogy would have been readily available "if the United States were to permit the operation of private lighthouses," which was "not at all inconceivable." Similarly, in *Anderson v. United States*, 55 F.3d 1379, 1381 (9th Cir. 1995), this Court relied on a private person analogy in *Gould v. Madonna*, 5 Cal. App. 3d 404, 406 (1970), a case in which a defendant allegedly negligently started a fire while "constructing a portion of U.S. Highway 40," "under a contract with the State of California."

Plaintiffs do not dispute that the rehabilitative programs are private in the only way that matters—they are not entitled to the official immunity afforded to government entities performing the same functions. *See, e.g.*, *Beauchene*, 88 Cal. App. 3d at 348 (noting that the defendant "concededly is not a 'public entity or public employee' within the meaning of [Cal. Gov. Code] § 845.8"). Under plaintiffs' approach, the United States would be liable "to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, but only if the private individual faces greater liability than public entities. Such a rule is contrary to the FTCA's plain language and purpose. Under the FTCA, the United States is entitled to the same

24

defenses from tort liability as private individuals under like circumstances, regardless of the source or nature of those defenses. *See, e.g.*, *LaBarge*, 798 F.2d at 367 (holding that "the United States should be entitled to the same immunity from suit enjoyed by a private employer covered by state workmen's compensation laws"); *Belluomini v. United States*, 64 F.3d 299, 304 (7th Cir. 1995)(same).[6]

Plaintiffs are on no firmer ground in urging that this case involves materially different duties than those at issue in the California cases involving private rehabilitation programs. Appellants' Br. 59. Plaintiffs allege that the probation officers negligently supervised Garrido by failing to report his drug violations to the Parole Commission. Similarly, the plaintiff in *Rice*, 154 Cal. App. 4th at 952, alleged that the treatment facility failed to comply with "reporting requirements" and failed to report the escape of four inmates to the police. And the plaintiff in *Cardenas*, 193 Cal. App. 3d at 334, alleged that the private facility "negligently failed to request [the probationer's] transfer" upon learning of his "violent propensities." As those cases demonstrate, any obligation probation officers had to report drug violations to the Parole Commission did not thereby create a duty of care to plaintiffs. *See Rice*, 154

---

[6] The Seventh Circuit acknowledged that its holding "may appear to create a windfall in favor of the United States." *Belluomini*, 64 F.3d at 304. But it noted that "further reflection reveals that the private analog rule serves an important purpose" by preventing states from "'adopting rules which enrich their own citizens at the expense of the deepest pocket.'" *Ibid.* (quoting *Carter v. United States*, 982 F.2d 1141, 1143 (7th Cir. 1992)).

Cal. App. 4th at 958 ("HRC's failure to follow applicable operational policies or procedures did not give rise to a duty where none otherwise existed.").

Plaintiffs' allegation that "[t]he Government had every reason to know that failing to report drug use would lead to foreseeable harm to third parties" does not alter the analysis. Appellants' Br. 51. Risks to third parties are inherent in parole and in many cases involving the supervision of persons in rehabilitative services. It is precisely because rehabilitation programs necessarily pose such risks that courts in California have rejected imposition of a duty of care to the general public on rehabilitation programs. *See Beauchene*, 88 Cal. App. 3d at 348 ("Each member of the general public who chances to come into contact with a parolee or probationer must risk that the rehabilitation effort will fail.").

**B. No Other Private Person Analogies Support Plaintiffs' FTCA Claim.**

**1.** Although plaintiffs urge that general invocation of general principles of California tort law compel a different result, the California decisions dealing with private rehabilitative services applied those general principles in the manner most relevant to plaintiffs' claim. Indeed, the court in *Beauchene* applied the same "*Rowland* factors" on which plaintiffs rely. *Compare Beauchene*, 88 Cal. App. 3d at 347 (quoting *Rowland*, 69 Cal. 2d at 113) *with* Appellants' Br. 40-41 (same).

As this Court has explained, under California law, "[w]hen it comes to the control of people, the background rule is that 'a person owes no duty to control the

26

conduct of another.'" *Anderson*, 55 F.3d at 1383 (quoting *Beauchene*, 88 Cal. App. 3d at 347). "California courts have carved out an exception to that rule, where a special relationship exists between the defendant and the injured party, or between the defendant and the active wrongdoer." *Ibid.* (internal quotation marks omitted) (citing *Tarasoff v. Regents of Univ. of Cal.*, 17 Cal. 3d 425, 435 (1976)); *see also* Restatement (Second) of Torts § 315. "The *Beauchene* line of cases simply refused to extend that special relationship concept to private criminal rehabilitation facilities," because "the public policy against assault, which drove the special relationship cases, was overcome by the public policy favoring rehabilitation." *Anderson*, 55 F.3d at 1383. Thus, "[t]he *Beauchene* line of cases does not create a special exception by refusing to hold private rehabilitation programs liable; it merely follows the background rule that one is not usually responsible for the actions of another." *Ibid.*

Indeed, in other contexts, California courts have refused to hold a defendant responsible for the actions of a wrongdoer despite a special relationship between the defendant and the wrongdoer. In *Hooks III v. Southern California Permanente Medical Group*, 107 Cal. App. 3d 435, 439 (1980), for example, a plaintiff asserted a tort claim against a hospital for the negligent supervision of its employee, who had previously engaged in illegal and unethical conduct while delivering a baby at the hospital, and who murdered the plaintiff's mother while assisting her in a home delivery. Relying on *Tarasoff v. Regents of University of California*, 17 Cal. 3d 425 (1976), the plaintiff

27

asserted that the hospital owed his mother a duty of care because of the special relationship between the hospital and its employee. *Hooks*, 107 Cal. App. 3d at 443-44.

The California Court of Appeal acknowledged that a special relationship existed between the hospital and its employee, but held that "an even more important factor in the imposition of liability was a foreseeable risk of harm to a foreseeable victim." *Hooks*, 107 Cal. App. 3d at 444 (citing *Tarasoff*, 17 Cal. 3d at 432-35). It rejected the plaintiff's assertion that the hospital owed his mother a duty of care because, for such a duty to exist, "the relationship involved must put one on notice that a specific, rather than a generalized, risk exists," and "one must know that the target of the risk is an identifiable and foreseeable victim." *Id.* at 444.[7]

The California Court of Appeal reached the same result in *Megeff v. Doland*, 123 Cal. App. 3d 251, 255-56 (1981), in which two stabbing victims asserted a tort claim against the assailant's wife. The plaintiffs alleged that the assailant's wife had negligently supervised her husband after agreeing to take care of him while knowing that he was mentally unstable and had violent tendencies. *Ibid.* The court rejected that claim, noting that, "[i]n general, one owes no duty to control the conduct of

---

[7] Plaintiffs rely for support on *Poncher v. Brackett*, 246 Cal. App. 2d 769 (1966). Appellants' Br. 42-43. But in *Poncher*, 246 Cal. App. 2d at 771, the plaintiff was employed by defendants as a babysitter for her assailant, and therefore was a foreseeable and specifically identifiable victim.

another." *Id.* at 257. The court acknowledged an exception to this rule where there is a special relationship between the defendant and the assailant or victim, *ibid.* (citing Restatement (Second) of Torts § 315), but held that any duty in such cases depends on the defendant "hav[ing] knowledge of a specific risk to an identifiable and foreseeable victim." *Ibid.* [8] "There being no foreseeable risk of harm to plaintiffs, [the defendant] owed them no duty of care." *Id.* at 260.

**2.** Plaintiffs also find no support in cases in which California courts imposed expanded duties of care on doctors because of policy consideration unique to the doctor-patient relationship. Appellees' Br. 43-47. Those considerations are not at issue in cases, such as this one, that involve the supervision of probationers or parolees by rehabilitation services.

Plaintiffs reliance on *Bragg v. Valdez*, 111 Cal. App. 4th 421 (2003) is misplaced. In that case, the court held "that a treating psychiatrist who releases a patient simply because the patient has no insurance, when that patient has been involuntarily committed under the Lanterman-Petris-Short Act (LPS Act) as a danger to himself and others, may be liable to the patient and any person that patient injures." *Id.* at 425.

---

[8] Plaintiffs attempt to dismiss as dicta the court's statements limiting the scope of duty. Appellants' Br. 48-49. But the court's reasoning with respect to duty directly supports its ultimate holding that the defendant owed no duty of care to the plaintiffs because there was "no foreseeable risk of harm to plaintiffs." *Megeff*, 123 Cal. App. 3d at 260. Moreover, the court's reasoning was fully consistent with the other California decisions discussed above.

The court acknowledged that generally "[t]here is no duty to warn unless the patient has made a specific threat against a specific identifiable person," but applied a different rule because the case involved "an alleged failure to do one's duty under the involuntary commitment procedures of the LPS Act," *id.* at 434-35, "merely because [the patient] is uninsured," *id.* at 431-32.

The other cases relied on by plaintiffs also turned on policy considerations unique to the doctor-patient relationship. In *Reisner v. Regents of the University of California*, 31 Cal. App. 4th 1195, 1197-98 (1995) the court concluded that a doctor who negligently failed to inform his patient she had HIV could be held liable to a third party who contracted HIV from the patient. The court emphasized that its holding was "designed to encourage the highest standard of care concerning communicable and infectious diseases." *Id.* at 1201.[9] Similarly, in *Myers v. Quesenberry*, 144 Cal. App. 3d 888, 890 (1983), the court held that a doctor who negligently failed to warn his diabetic patient against driving could be held liable to a third party injured in the resulting car accident. The court explained that this expanded duty was limited

---

[9] Even in the context of a doctor-patient relationship and the particular policy concerns at issue in that case, the court did not impose the type of open-ended duty that plaintiffs would make actionable in this case. The court held that "[o]nce the physician warns the patient of the risk to others and advises the patient how to prevent the spread of the disease, the physician has fulfilled his duty—and no more (but no less) is required." *Reisner*, 31 Cal. App. 4th at 1203. The court did not hold that the physician was required to warn third parties of the dangers posed by his patient.

30

to the particular "circumstances where warning the actor is a reasonable step to take in the exercise of the standard of care applicable to physicians," and expressly distinguished the case from other categories of cases that involve "several policies which weighed against the imposition of negligence liability." *Id.* at 893.

Because these cases turned on policy considerations unique to the doctor-patient relationship, they shed no light on the tort liability of a private individual in like circumstances to the United States in this case. At the very least, compared to cases involving private rehabilitation services, those cases do not present "the most reasonable analogy" to the actions at issue here. *See LaBarge*, 798 F.2d at 367.

## II. Plaintiffs' FTCA Claim Is Barred by the Discretionary Function Exemption.

**1.** Plaintiffs' FTCA claim fails for the independent, alternative reason that it falls within the discretionary function exception, which bars suit under the FTCA for any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).[10]

---

[10] This Court need not decide whether this case is barred by the discretionary function exception if it decides that plaintiffs' claim fails because the United States did not owe a duty of care to the general public or because the probation officers' alleged failure to report did not proximately cause plaintiffs' injuries. *See U.S. Gold & Silver Invs., Inc. v. United States*, 885 F.2d 620, 621 (9th Cir. 1989) ("We need not reach the government's

31

For a claim to fall within the scope of this exception, the conduct on which the claim is premised must involve an element of judgment or choice, and the exercise of that judgment must be susceptible to policy considerations. *See United States v. Gaubert*, 499 U.S. 315, 322 (1991). At the first step of the discretionary function inquiry, the Court must determine whether the challenged conduct involved an "element of judgment or choice." *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988). "[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.* at 536. Where a legal directive compels a particular course of action, "there is no discretion in the conduct for the discretionary function exception to protect." *Ibid.*; *see Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008).

At the second step of the discretionary function inquiry, the Court must ask whether the judgment or choice at issue was "'susceptible to policy analysis,'" making it the type of function the exception was designed to protect. *GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174 (9th Cir. 2002) (quoting *Gaubert*, 499 U.S. at 325). It is not necessary for the United States to prove a conscious decision based on the policy analysis. *See Kennewick Irrigation Dist. V. United States*, 880 F.2d 1018, 1028 (9th Cir. 1989). It is enough that the choice is one to which a policy analysis may apply.

argument that this claim falls within the FTCA's discretionary function exception, because the complaint does not state a claim within the purview of the FTCA in the first instance.").

*Id.*; *Bailey v. United States*, 623 F.3d 855, 863 (9th Cir. 2010) ("[S]o long as a decision involves even two competing interests, it is 'susceptible' to policy analysis and is thus protected by the discretionary function exception.").

**2.** The gravamen of plaintiffs' claim is that, but for the government's negligence, it would have revoked Garrido's parole and thus prevented Garrido from kidnapping Ms. Dugard. Whether to revoke a prisoner's parole plainly involves an "element of judgment or choice." *Berkovitz,* 486 U.S. at 536-37; *see also Morrissey v. Brewer*, 408 U.S. 471, 480 (1972) (noting that what the Commission decides "to do about the violation once it is identified[] is not purely factual but also predictive and discretionary").

The Commission may exercise that discretion at several points in the parole review process. When an alleged parole violation is reported, the Commission may decide to issue a warrant for the parolee, 28 C.F.R. § 2.44(a), or it may decide to withhold the warrant "until the frequency or seriousness of the violations, in the opinion of the Commission, requires such issuance," *id.* § 2.44(b). If the Commission decides to issue a warrant, it holds a "preliminary interview" with the parolee "to enable the Commission to determine if there is probable cause . . . and if so, whether a revocation hearing should be conducted." 28 C.F.R. § 2.48(a). Even if the Commission finds probable cause after that interview, it may decline to hold a revocation hearing if it determines that it "is not warranted despite the violation found." *Id.* § 2.48(e). And even if the Commission ultimately decides to hold a

33

revocation hearing and finds by a preponderance of the evidence that the parolee has violated a condition of parole, it may take any number of actions besides revoking parole. *See* 18 U.S.C. § 4214(d); 28 C.F.R. § 2.52(a). The Commission may "[r]estore the parolee to supervision," or, "where appropriate," may reprimand the parolee, modify the conditions of release, or refer the parolee to a community treatment center. 18 U.S.C. § 4214(d)(2)-(4); 28 C.F.R. § 2.52(a)(1). "The Commission may take any such action provided it has taken into consideration whether the parolee has been convicted of [a crime] subsequent to his release on parole" and "whether such action is warranted by the frequency or seriousness of the parolee's violation of any other condition or conditions of his parole." 18 U.S.C. § 4214(d).[11]

The Commission's revocation decisions also satisfy the second step of the inquiry, because they are "susceptible to policy analysis." *GATX/Airlog Co.*, 286 F.3d at 1174. The Commission's parole decisions implicate policy considerations regarding rehabilitation of convicts, public safety, and the economics of incarceration. In

---

[11] As to individuals released after December 31, 1988, the Commission "shall revoke parole or mandatory release" upon finding by a preponderance of the evidence that the parolee "has possessed a controlled substance." 28 C.F.R. § 2.40(f); *see also* Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, § 7303, 102 Stat. 4181 (amending 18 U.S.C. § 4214(f) to provide that a parolee released after December 31, 1988 "found by the Commission to be in possession of a controlled substance shall have his parole revoked"). That provision does not apply in this case, however, because Garrido was released on parole before December 31, 1988. Additionally, "[m]andatory revocation does not apply to cases in which there is evidence of only use and the releasee is not found by the Commission to have actually possessed any illegal controlled substances." Notes and Procedures § 2.40-19 (6 ER 1252).

34

establishing the Parole Commission, Congress recognized that the "purposes which parole serves may at times conflict" and that parole decisions therefore require the "weigh[ing] of several complex factors."  Joint Explanatory Statement, at 19-20.  As the Supreme Court has explained, upon learning of a parole violation, the Commission must determine if "the parolee [should] be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation."  *Morrissey v. Brewer*, 408 U.S. at 480.  That determination is "complex" and "involves the application of expertise . . . in making a prediction as to the ability of the individual to live in society without committing antisocial acts."  *Ibid.*  It is precisely the sort of "'decision[] grounded in social, economic, and political policy'" that Congress intended the discretionary function exception to bar from "'judicial second-guessing . . . through the medium of an action in tort.'"  *Berkovitz*, 486 U.S. at 536-37 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)).

**3.**  The district court acknowledged that the United States is immune from liability for the Commission's discretionary parole revocation decisions, 1 ER 64, but nonetheless held that plaintiffs could assert an FTCA claim alleging negligence on the part of probation officers for failing to satisfy mandatory reporting obligations, 1 ER 69-70.[12]  The district court erred, however, by failing to look beyond "the

---

[12] The district court held that the Manual's Notes and Procedures impose mandatory reporting requirements on probation officers.  *See* 1 ER 29-33; *see also, e.g.*, Notes and

surface of [plaintiffs'] complaint for the purpose of ascertaining the true basis of" their claim. *Gen. Dynamics Corp. v. United States*, 139 F.3d 1280, 1283 (9th Cir. 1998).

This Court has held that a plaintiff that asserts an injury resulting from a discretionary act cannot circumvent the FTCA's discretionary function exemption by alleging negligence as to a preceding act. *See Gen. Dynamics Corp.*, 139 F.3d at 1283. In *General Dynamics Corporation*, the plaintiff sought to recover under the FTCA for legal fees incurred in defending a prosecution commenced on the basis of a negligently prepared audit report. *Id.* at 1282. Emphasizing that the decision to take enforcement action could not be challenged under the FTCA, this Court held that the plaintiff could not plead around the discretionary function exception by "evading the discretionary choice of the persons who actually caused the damage." *Id.* at 1283; *see Dichter-Mad Family Partners, LLP v. United* States, 709 F.3d 749, 751 (9th Cir. 2013) ("'Where, as here, the harm actually flows from the prosecutor's exercise of discretion, an attempt to recharacterize the action as something else must fail.'" (quoting *Gen. Dynamics Corp.*, 139 F.3d at 1286)); *see also Sloan v. Dep't of housing & Urban Dev.*, 236

---

Procedures § 2.40-13(c)(2) (6 ER 1250) ("Any instance of illegal drug use by any parolee shall be reported by the probation officer to the Commission."); *id.* § 2.42-02(b)(9) (6 ER 1253-54) ("The Parole Commission delegates to the probation officer the authority to exercise discretion as to when technical violations or infractions are reported except that all violations shall be reported immediately under the following circumstances: The release violates any special condition of parole or mandatory release.").

F.3d 756, 761 (D.C. Cir. 2001); *Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279, 286

(3rd Cir.) (en banc), *cert. denied*, 516 U.S. 806 (1995).

The same reasoning applies to bar plaintiffs' claim in this case. Plaintiffs' injuries

would have been avoided only if the Commission had exercised its discretion to

revoke Garrido's parole. Nonetheless, plaintiffs do not directly attack the

Commission's exercise of discretion, and instead characterize their claim as an attack

on the work of probation officers in reporting Garrido's parole violations to the

Commission. *Cf. Gen. Dynamics Corp.*, 139 F.3d at 1284 ("The plaintiffs chose not to

attack the Commissioner's exercise of discretion; they hardly could. Instead they

attacked the work of the laboratory technicians.").

Plaintiffs cannot avoid the discretionary function exception by challenging the

manner in which probation officers provided information to the Commission.

"[D]ecision makers do, of necessity, rely upon information from others, and the

purpose of the discretionary function exception would be severely undercut if a

plaintiff could adopt the simple expedient of attacking one or more of the people who

supplied information to the decision maker." *Gen. Dynamics Corp.*, 139 F.3d at 1284.

Under plaintiffs' approach, any decision by the Commission to grant, deny, revoke, or

alter parole would be subject to challenge under the FTCA on the basis that other

parts of the government failed to accurately provide the Commission with all relevant

information. Such challenges would be no less intrusive than claims challenging the

Commission's decisions directly. *See ibid.* ("[T]here is no difference in the quality or quantity of the interference occasioned by judicial second guessing, whether the plaintiff purports to be attacking the data base on which the policy is founded or acknowledges outright that he or she is challenging the policy itself." (quoting *Fisher Bros. Sales, Inc.*, 46 F.3d at 286)).

This Court's holding in *In re Glacier Bay*, 71 F.3d 1447 (9th Cir. 1995), does not suggest a different result. In that case, this Court permitted an FTCA claim against hydrographers for alleged negligence in preparing nautical charts, despite the fact that the charts were subject to approval by reviewers that exercised discretion. *Id.* at 1450-51. In *General Dynamics Corporation*, 139 F.3d at 1284, this Court explained that the *In re Glacier Bay* decision was driven by the "tight coupling between hydrographers, reviewers, charts, and results." It cautioned that "if *Glacier Bay* is read too broadly, [it] could swallow up a large part of the discretionary function exception." *Id.* at 1284-85. Thus, it explained, *In re Glacier Bay* does not apply "when a totally separate exercise of discretion stands between the" alleged negligence and the complained of injury. *Id.* at 1285.

In this case, unlike *In re Glacier Bay*, multiple discretionary decisions stood between a probationer officer's report of a parole violation and the Commission's decision to revoke parole. Before Garrido's parole could have been revoked, the Commission would have, first, had to decide to issue a warrant for Garrido; second,

after interviewing Garrido, had to decide to hold a revocation hearing; and, third, after holding a revocation hearing at which Garrido could present evidence, had to decide to revoke Garrido's parole rather than reprimand him, alter the conditions of his parole, or simply return him to parole. *See supra* at 31-32. Thus, the Commission would have had "access to a great deal of information beyond that submitted by" the parole officers, and would have exercised "a broad based discretion . . . independent of the [probation officers] in every sense of the word." *Gen. Dynamics Corp.*, 139 F.3d at 1285. Because plaintiffs' FTCA claim really amounts to a challenge to the exercise of that discretion, their claim is barred by the discretionary function exception.

## III. The Probation Officers' Alleged Negligence Did Not Proximately Cause Plaintiffs' Injuries.

**1.** Even if plaintiffs' claim were otherwise viable, it would fail because the probation officers' alleged negligent reporting did not proximately cause plaintiffs' injuries. In order to establish liability, plaintiffs must establish not only that the United States owed a duty of care to the general public (which it did not), but also that the probation officers' alleged negligence "was a proximate or legal cause of [plaintiffs'] injuries." *Saelzler v. Advanced Group 400*, 25 Cal. 4th 763, 767 (2001). "Proximate cause is legal cause, as distinguished from the laymen's notion of actual cause, and is always, in the first instances, a question of law." *Walt Rankin & Assocs., Inc. v. City of Murrieta*, 84 Cal. App. 4th 605, 626 (2000) (internal quotation marks

39

omitted). It is "'that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produced the injury . . . and without which such result would not have occurred.'" *Fleming v. State of California*, 34 Cal. App. 4th 1378, 1384 (1995) (quoting *State of Cal. v. Superior Court*, 150 Cal. App. 3d 848, 857 (1984)).

On appeal, plaintiffs challenge the district court's holding that any failure to report violations to the Parole Commission prior to and through November 1989 did not proximately cause their injuries. Appellants' Br. 63-71. That holding was correct because, even had the Parole Commission revoked Garrido's parole during that time period, he would have been out of prison by the time that he kidnapped Dugard. 1 ER 41-43. More generally, however, none of the probation officers' alleged failures to report Garrido's violations could have proximately caused plaintiffs' injuries, because the Parole Commission had intervening and independent discretion to decide whether to revoke Garrido's parole.

**2.** Plaintiffs cannot establish proximate causation in this case because, under California law, the Parole Commission's intervening discretionary act breaks any causal chain between the probation officers' alleged failure to report and plaintiffs' injuries. In *Whitcombe v. County of Yolo*, 73 Cal. App. 3d 698, 707 (1977), the California Court of Appeal rejected a claim against California probation officers that was nearly

identical to the one at issue in this case,[13] reasoning that "[g]ranting or revoking probation is within the discretion of the trial court," and "[w]hile the court must consider a probation officer's report, it is not bound by that report and recommendation." *Id.* at 708. It held that, "[i]n view of the latitude accorded the trial court," the plaintiffs' claim "that defendants' alleged inaction in keeping and presenting reports about [the probationer] precluded the court from revoking . . . probation and thus proximately caused their injuries, is specious." *Ibid.* Similarly, in *Fleming v. State of California*, 34 Cal. App. 4th at 1381-82, the court held that parole officers' negligent inaction "was not a legal or proximate cause of plaintiffs' injuries" because "arrest without a period of incarceration would not necessarily have prevented the crime," and incarceration "would have involved procedural steps involving the exercise of discretion and thus have broken the causal chain." *Id.* at 1384.[14]

---

[13] In *Whitcombe*, 73 Cal. App. 3d at 703-04, probation officers failed to investigate and report a violation of probation, and, six days later, the probationer assaulted and severely injured several victims. The plaintiffs alleged that the officers breached a mandatory duty to report violations to the court, thus "effectively precluding the court from determining . . . whether to revoke . . . probation." *Id.* at 707.

[14] Plaintiffs argued before the district court that the test for proximate causation stated in *Fleming* and *Whitcombe* was overruled by *Mitchell v. Gonzales*, 54 Cal. 3d 1041 (1991). The court in *Mitchell* merely clarified the language to be included in jury instructions on causation, in order to avoid confusion. Moreover, it emphasized that the instructions at issue addressed only "cause in fact," and that "[i]ssues . . . properly referred to as questions of proximate or legal cause are contained in other

41

In this case, upon a report of Garrido's parole violations to the Parole Commission, revocation of Garrido's parole would have depended on a series of decisions, each of which was committed to the Commission's discretion. The Commission may decide to withhold the warrant "until the frequency or seriousness of violations, in the opinion of the Commission, requires such issuance," 28 C.F.R. § 2.44(b). It may decline to hold a revocation hearing if it determines that it "is not warranted despite the violations found." *Id.* § 2.48(e)(1). And, even upon holding a revocation hearing and finding by a preponderance of the evidence that the parolee has violated a condition of parole, it may take a number of actions besides revoking parole. *See* 18 U.S.C. § 4214(d); 28 C.F.R. § 2.52(a). In choosing among these options, the Commission has made clear that its "preference is to use reimprisonment as a last resort, i.e., when other sanctions have been unsuccessfully tried or are plainly inappropriate." Notes and Procedures § 2.21-01 (6 ER 1216).

Thus, as the district court recognized in this case, plaintiffs "injury indisputably could not have been brought about without an additional discretionary act or omission of the defendant, for which the defendant is immune from liability." 1 ER 64. In such circumstances, the probation officers' alleged failure to report Garrido's violations cannot possible be said to have caused a "natural and continuous

---

instructions." 54 Cal. 3d at 1044 n.2. Plaintiffs' claim is particularly unconvincing because *Fleming* was decided four years after *Mitchell.*

42

sequence, unbroken by any efficient intervening cause" that "produced the injury . . . and without which such result would not have occurred." *Fleming*, 34 Cal. App. 4th at 1378 (1995) (quotation marks omitted).

**3.** The California Supreme Court is currently considering principles of proximate causation in a case involving a claim that alleged failures to perform mandatory duties under the Sexually Violent Predators Act, prior to the release of an individual on parole, proximately caused the parolee's subsequent rape and murder of the plaintiff's sister. The Court of Appeal held that proximate causation did not exist, concluding that the case was governed by *Whitcombe* and *Fleming*. *See State Dep't of State Hosps. v. Superior Court*, 163 Cal. Rptr. 3d 770, 774-75 (2013). The California Supreme Court granted the plaintiff's petition for review of that holding. *See State Dep't of State Hosps. v. Superior Court*, 167 Cal. Rptr. 3d 657 (Feb. 11, 2014). Even if the California Supreme Court ultimately disagrees with the California Court of Appeal regarding application of *Whitcombe* and *Fleming* to the particular facts of that case, there can be no question that the facts in this case are nearly identical to those in *Whitcombe*.

Although plaintiffs have introduced deposition testimony and other evidence purporting to predict how the Commission would have treated reported violations, ultimately any Commission decision with respect to Garrido's case would have been solely within the Commission's discretion and therefore is not a question for the trier of fact. *See, e.g.*, *State of Cal.*, 150 Cal. App. 3d at 857-61 (noting that in *Whitcombe* the

43

court concluded "that plaintiffs could not show proximate cause as a matter of law," and extending that holding to a claim against the Real Estate Commission for failure to investigate a complaint).

The district court erred in analogizing this case to a legal malpractice action, in which the trier of fact may determine whether there likely would have been a different verdict if not for an attorney's mistakes. *See* 1 ER 65-66. The Parole Commission does not simply weigh evidence and issue a verdict. Rather, as the court explained in *Whitcombe*, the Commission "must be guided by considerations pertaining to psychology, sociology and penology, [and] by general rules of policy which have not been and in the nature of the case should not be crystallized into positive or definitive rules of law." 73 Cal. App. 3d at 708 (quotation marks omitted); *see also Morrissey*, 408 U.S. at 480 (noting that the Commission's decisions are "not purely factual but also predictive and discretionary").

For similar reasons, plaintiffs' reliance on *Vickers v. United States*, 228 F.3d 944 (9th Cir. 2000), is misplaced. *See* Appellants' Br. 65-67. In that case, this Court held that Immigration and Naturalization Service's failure to investigate its employee for a shooting incident could have proximately caused the victim's injury, when the employee later used his service-issued revolver to shoot her. *See Vickers*, 228 F.3d at 953-55. But, in *Vickers*, this Court relied on the fact "that the policy behind the INS's weapons investigation procedure was to ensure that only qualified personnel carry

44

service weapons and that they only be used for authorized purposes." *Id.* at 955. By contrast, here, the Commission's parole decisions implicate conflicting policy considerations regarding rehabilitation of convicts, public safety, and the economics of incarceration. *See* Joint Explanatory Statement, at 19-20 (noting that the "purposes which parole serves may at times conflict" and that parole decisions therefore require the "weigh[ing] of several complex factors").

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

STUART F. DELERY
  *Assistant Attorney General*

MARK B. STERN
  *(202) 514-5089*
PATRICK G. NEMEROFF
  *(202) 305-8727*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7217*
  *Department of Justice*
  *950 Pennsylvania Ave., NW*
  *Washington, DC 20530*

JULY 2014

45

## STATEMENT OF RELATED CASES

Counsel for the United States are aware of no related cases in this Court as defined in Circuit Rule 28-2.6.

/s/ Patrick G. Nemeroff
PATRICK G. NEMEROFF

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7), I hereby certify that the foregoing Brief for Appellant contains 11,176 words, according to the count of this office's word processing system.


/s/ Patrick G. Nemeroff
PATRICK G. NEMEROFF

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing Brief for Appellee with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Appellate CM/ECF system on July 24, 2014. Participants in the case are registered CM/ECF users and service will be accomplished through that system.

/s/ Patrick G. Nemeroff
PATRICK G. NEMEROFF

**ADDENDUM**

# TABLE OF CONTENTS

**<u>Page</u>**

28 U.S.C. § 1346 ...................................................................................... A-1

28 U.S.C. § 2674 ...................................................................................... A-2

28 U.S.C. § 2680 ...................................................................................... A-3

## 28 U.S.C. § 1346

* * * *

(b)(1) Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

* * * *

**28 U.S.C. § 2674**

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

* * * *

**28 U.S.C. § 2680**

The provisions of this chapter and section 1346(b) of this title shall not apply to--

    (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

* * * *